1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                         CENTRAL DISTRICT OF CALIFORNIA

10   BRENDA D. JONES,                    )   No.  CV 05-2952-PJW
                                         )
11                  Plaintiff,           )
                                         )   MEMORANDUM OPINION AND ORDER
12              v.                       )
                                         )
13   JO ANNE B. BARNHART,                )
     Commissioner of the                 )
14   Social Security Administration,     )
                                         )
15                  Defendant.           )
     _____)

16

17                                  I.

18                             INTRODUCTION

19        Plaintiff brings this action pursuant to 42 U.S.C. § 405(g),

20   seeking reversal of the decision by Defendant Social Security

21   Administration ("the Agency") denying her benefits.  Alternatively,

22   she asks the Court to remand the case to the Agency for further

23   proceedings.  After reviewing the record and for the reasons discussed

24   below, the Court finds that the decision of the Agency is based on

25   substantial evidence and is free from material legal error and is,

26   therefore, AFFIRMED.

27

28

II.

SUMMARY OF FACTS AND PROCEEDINGS

Plaintiff was, at the time of the administrative hearing, 55-years old, with a high school education and two years of college. (Administrative Record ("AR") 19, 34.)  Her past relevant work experience included work as a claims adjuster and claims examiner. (AR 19.)  On July 26, 2002, she filed applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") benefits, alleging inability to work since February 1, 2002, due to hypothyroidism, bipolar disorder, depression, hepatitis, hypertension, and hypertensive cardiovascular disease.  (AR 70-73, 87, 380-84.) Following denials of her claims at the initial and reconsideration levels, she requested a hearing before an ALJ.

On November 18, 2003, the ALJ held a hearing.  (AR 33-52.)  On May 27, 2004, he issued a decision, denying Plaintiff's application. (AR 18-25.)  The ALJ found that Plaintiff suffered from a "severe" depressive disorder, not otherwise specified, but that she retained the residual functional capacity "to perform work at all exertional levels that is simple, task oriented, does not involve group effort at problem solving and would require no more than occasional contact with the general public."  (AR 24.)  Although he found that Plaintiff could not perform her past relevant work, he concluded that she could perform other work that existed in significant numbers in the national economy, and, therefore, was not disabled.  (AR 24-25.)  Plaintiff requested review by the Appeals Council, which was denied.  (AR 5-9.) Plaintiff then filed suit in this Court.

2

III.

ANALYSIS

Plaintiff contends that the ALJ erred when he found that she was not credible.  She also argues that the ALJ improperly rejected the treating doctors' opinions and accepted, instead, the examining doctors' opinions.  For the following reasons, Plaintiff's arguments are rejected.

A.   <u>Standard of Review</u>

"Disability" under the applicable statute is defined as the inability to perform any substantial gainful activity because of "any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. §§ 416(i)(1), 1372(a)(3)(A).  The Court may overturn the ALJ's decision that a claimant is not disabled only if the decision is not supported by substantial evidence or is based on legal error.  *See Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).

Substantial evidence "'means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971)(quoting *Consol. Edison Co. V. NLRB*, 305 U.S. 197, 229 (1938)).  It is "more than a mere scintilla but less than a preponderance," *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1998), and "does not mean a large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

The Court must uphold the ALJ's conclusion even if the evidence in the record is susceptible to more than one rational interpretation. *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999).  Indeed, if the record evidence can reasonably support either

3

affirming or reversing the Agency's decision, this Court must not substitute its judgment for that of the ALJ. *See Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  If the ALJ committed error but the error was harmless, reversal is not required.  *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004)(applying the harmless error standard).

B.   <u>The ALJ's Credibility Finding</u>

Plaintiff challenges the ALJ's finding that she was not credible, claiming that the reasons the ALJ cited for rejecting her credibility were "flimsy."  (Joint Stipulation ("JS") at 20.)  For the following reasons, the Court disagrees.

Once Plaintiff has established the existence of a medically determinable impairment, which could reasonably produce the symptoms alleged, her testimony concerning the severity of the symptoms cannot be rejected unless the ALJ provides specific, clear, and convincing reasons for doing so.  *Smolen v. Chater*, 80 F.3d 1273, 1281-82 (9th Cir. 1996).  If the ALJ's credibility finding is supported by substantial evidence in the record, the Court may not engage in second-guessing.  *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002).

Plaintiff testified that she cannot work because she "get[s] into depressed states where [she] can't remember."  (AR 36.)  As examples of her memory problems, she testified that she sometimes forgets to take her medications or that she sometimes forgets to pay her bills on time, which causes her to become angry or depressed and leads to crying spells three or four times a week.  (AR 38.)  She also explained that anger affects her ability to deal with others and with situations.  (AR 39.)  For example, she claimed that she could not

4

remember "little minor things," which makes her angry.  (AR 39.)  She
also complained of concentration difficulties--"thinking of little
things"--which she could not put into words.  (AR 39.)  She denied
social activities other than "a lot of church work." (AR 40.)  She
claimed that she has difficulty getting along with other people,
"especially with people that know [her] and know that [she's] a
recovering alcoholic." (AR 40.)  She also claimed that she becomes
paranoid around them because she thinks that they are watching her to
see if she makes a mistake or begins drinking again.  (AR 40.)  She
further testified that, as a result of depression and anxiety, she
gets only three to four hours of sleep a night.  (AR 38.)  She
testified to side effects of medication she takes for her depression,
such as loss of appetite and loss of weight (AR 37), but admitted that
her appetite had increased over the last year or two due to
supplements and changes in medication (AR 38).

     The ALJ did not believe Plaintiff's claims regarding her mental
and emotional health.  In support of his finding that she was not
credible, he cited various inconsistencies between her testimony and
the documentary record, a valid consideration in assessing
credibility.  *Fair v. Bowen*, 885 F.2d 597, 604 n.5 (9th Cir. 1989).
For example, despite Plaintiff's claims of poor memory that caused her
to forget to take her medications, the ALJ noted that she consistently
reported to her treating physicians throughout the relevant period
that she had been compliant.  (AR 21, 37, 241, 245, 246, 317-20.)  The
ALJ also noted that Plaintiff's psychiatrist indicated that
Plaintiff's memory was intact, which view was supported by the medical
records.  (AR 19, 191, 242, 245, 317, 322, 318.)  Inconsistencies
between a claimant's complaints and observations by medical personnel

5

are legitimate reasons for finding a claimant not credible. *Morgan*, 169 F.3d at 599-600.  The ALJ further noted that, despite Plaintiff's claims of poor memory and concentration, she admitted "doing a lot of church work, including being an assistant to a Sunday school class teacher, working crossword puzzles and reading 30 minutes daily."  (AR 22.)  Although it is true, as Plaintiff argues, that she need not be "'utterly incapacitated'" to be eligible for benefits, (JS at 21 (quoting *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001))), the ALJ's finding that Plaintiff "engages in activities that require normal memory and concentration" is a reasonable one and is supported by this record.  (AR 22.)  Plaintiff's own testimony, moreover, does not support her claim that her memory and concentration are unusually poor.  (AR 34-45.)

The ALJ also cited psychological test results of examining psychologist Roger Izzi, which showed that Plaintiff was exaggerating "in a desire to appear more impaired."  (AR 22.)  This is another valid reason for discounting Plaintiff's testimony.  *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001).

Plaintiff argues that the ALJ's conclusion regarding Dr. Izzi's test results "distort[ed] the more equivocal findings of Dr. Izzi" because Dr. Izzi suggested that some of Plaintiff's test scores could be attributed to "'emotional factors or a poor effort.'"  (JS at 22.) This argument is rejected.  Any ambiguity in Dr. Izzi's findings was for the ALJ to resolve.  *Magallanes*, 881 F.2d at 750.  Although Dr. Izzi's findings could be interpreted as Plaintiff urges, the ALJ's interpretation of the evidence is equally reasonable and, for that reason, must be upheld.  *See Morgan*, 169 F.3d at 599; *Sample v.*

1   *Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982).  Accordingly, there was

2   no error in the ALJ's finding that Plaintiff was not credible.

3           C.   The Physicians' Opinions

4           Plaintiff contends that the ALJ erred when he relied on the

5   opinions of the examining and consulting doctors instead of the

6   treating doctors.  For the following reasons, the Court finds that the

7   ALJ did not err.

8           Although a treating physician's opinion is generally afforded

9   more weight in disability cases than a non-treating physician's

10  opinion, it is not binding on an ALJ.  *Tonapetyan*, 242 F.3d at 1148.

11  The ALJ "need not accept a treating physician's opinion which is brief

12  and conclusionary in form with little in the way of clinical findings

13  to support [its] conclusion."  *Magallanes*, 881 F.2d at 751 (internal

14  quotations omitted); *see also Johnson v. Shalala*, 60 F.3d 1428, 1432

15  (9th Cir. 1995).  To reject the *uncontroverted* opinion of a treating

16  physician, an ALJ must set forth clear and convincing reasons for

17  doing so.  *Magallanes*, 881 F.2d at 751.  "Where the opinion of the

18  claimant's treating physician is contradicted, and the opinion of a

19  nontreating source is based on independent clinical findings that

20  differ from those of the treating physician, the opinion of the

21  nontreating source may *itself* be substantial evidence; it is then

22  solely the province of the ALJ to resolve the conflict."  *Andrews v.*

23  *Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995)(emphasis added).  If, on

24  the other hand, the nontreating source relies on the same findings as

25  the treating source, the ALJ must provide specific and legitimate

26  reasons for disbelieving the treating source.  *Id.*

27

28

7

Case 2:05-cv-02952-PJW   Document 16   Filed 09/11/06   Page 8 of 17   Page ID #:59

1          1.   Dr. N. H. Heard

2          Plaintiff went to the Augustus Hawkins Medical Center on April

3    29, 2002, complaining of mood swings, decreased appetite, decreased

4    energy, feelings of guilt, and racing thoughts.  (AR 349.)  That same

5    day, Dr. Heard, the admitting doctor, assessed Plaintiff's Global

6    Assessment of Functioning ("GAF") at 50.[1]  (AR 349.)  Plaintiff

7    contends that Dr. Heard's GAF assessment constitutes an opinion of

8    disability, which can only be rejected by the ALJ for specific and

9    legitimate reasons since Dr. Heard was her treating physician.  She

10   argues that the ALJ failed to even mention the score, which proves

11   that he failed to give it due weight.  (JS at 14.)  The Court

12   disagrees.

13         Although the ALJ did not dissect every entry in Dr. Heard's

14   records, he adequately summarized the treatment record, noting that

15   Plaintiff was diagnosed with alcohol dependence in remission and a

16   mood disorder not otherwise specified.  (AR 19.)  He pointed out that

17   Plaintiff initially denied hallucinations but later claimed to hear

18   voices.  (AR 19.)  He noted that, despite complaints of tremors due to

19   her medication, her physicians noted no abnormal movements (AR 19,

20   241, 242, 323, 330), and they described Plaintiff as pleasant,

21   cooperative, and well-groomed (AR 241, 242, 245, 246, 317, 318, 319,

22

23

24         [1]   The GAF scale reports a "clinician's judgment of the
individual's overall level of functioning" which is used in "planning
25   treatment and measuring its impact, and in predicting outcome."
American Psychiatric Association, *Diagnostic & Statistical Manual of
26   Mental Disorders*, 32 (4th ed. 2000).  A GAF of 41-50 indicates
"[s]erious symptoms (e.g., suicidal ideation, severe obsessional
27   rituals, frequent shoplifting) OR any serious impairment in social,
occupational, or school functioning (e.g., no friends, unable to keep
28   a job)."  *Id.* at 34.

320, 323, 327, 330), that memory was intact (AR 245, 317, 318), and that behavior was calm (AR 246, 322, 327).  Thus, despite a GAF of 50, there is no indication from the treatment records that Plaintiff was "disabled" as of the time of Dr. Heard's initial evaluation or at any time thereafter, and no treating psychiatrist, including Dr. Heard, has opined that Plaintiff was disabled.[2]  As such, Dr. Heard's GAF score was not tantamount to an opinion of disability and the ALJ's failure to include it in his decision was not erroneous.

## 2.   Dr. Ron Zodkevitch

In October 2003, Plaintiff was referred by her attorney to Dr. Ron Zodkevitch for a disability evaluation.  (AR 221-31.)  Plaintiff complained to Dr. Zodkevitch of a long history of depression, which took a "downturn" in December 2000.  (AR 221.)  She complained of an inability to concentrate when watching television or reading the newspaper.  (AR 223.)  She also complained of eating poorly, and reported that she had lost 20 pounds in two years, had low energy, and had trouble sleeping.  (AR 222.)  She described feeling extremely irritable and reported that she was unable to remember things.  (AR 222.) She claimed that she could not read or do anything.  She told Dr. Zodkevitch that she had a difficult time going out by herself. (AR 222.)  She also claimed that she had no recreational activities, participated in no social activities, and spent most of the day in bed by herself.  (AR 223, 224.)

---

[2]   Although there are two references to questionnaires and forms requested from or completed by the treating physician in connection with Plaintiff's Social Security hearing, no such questionnaires or forms are in the administrative record.  (AR 241, 245.)

9

1    Dr. Zodkevitch diagnosed Plaintiff with major depressive
2    disorder, with psychotic features, and panic disorder with
3    agoraphobia.  (AR 228.)  He assessed her GAF at 35,[3] and opined that
4    Plaintiff was totally disabled.  (AR 228-29.)  He also opined that
5    Plaintiff's ability to perform various work-related mental functions
6    was moderately to markedly limited.  (AR 235-37.)

7    The ALJ gave Dr. Zodkevitch's opinion no weight because Dr.
8    Zodkevitch saw Plaintiff only once at the request of her attorney.
9    (AR 20.)  The ALJ concluded, therefore, that Dr. Zodkevitch was
10   neither objective nor a treating source.  (AR 20.)  These are not
11   valid reasons to reject Dr. Zodkevitch's opinion.  The fact that Dr.
12   Zodkevitch is not a treating physician only means that his opinion is
13   not entitled to controlling weight or to the deference generally
14   accorded the treating physician.  That he only saw Plaintiff on one
15   occasion makes Dr. Zodkevitch's opinion no less persuasive than the
16   consultative examiners' opinions, who also saw Plaintiff on only one
17   occasion.  The fact that Dr. Zodkevitch examined Plaintiff at the
18   request of Plaintiff's attorney makes him no less objective than the
19   consultative examiners, who only examined Plaintiff because the Agency
20   asked them to.  *Reddick v. Chater*, 157 F.3d 715, 726 (9th Cir. 1998)
21   (explaining the mere fact that a medical report is provided at the
22   request of counsel is not an adequate reason for discounting it).
23   Were these the only reasons that the ALJ rejected Dr. Zodkevitch's
24

25        [3]  A GAF of 31-40 indicates "[s]ome impairment in reality testing
26   or communication (e.g., speech is at times illogical, obscure, or
     irrelevant) OR major impairment in several areas, such as work or
27   school, family relations, judgment, thinking, or mood (e.g., depressed
     man avoids friends, neglects family, and is unable to work. . .)".
28   *DSM* at page 34.

1  opinion, the decision would be reversed.  But the ALJ cited other,
2  legitimate reasons as well.

3      The ALJ noted inconsistencies between Plaintiff's statements to
4  Dr. Zodkevitch and her statements to other doctors.  For example, the
5  ALJ noted that Plaintiff told Dr. Zodkevitch that her medications were
6  ineffective, whereas she told her treating doctor that she had "no
7  side effects from her medications and felt better, had a better
8  appetite and an increased energy level." (AR 20, 189, 246.)  Although
9  the records indicate variable levels of symptoms, including weight
10 loss, the treatment notes for November 2003, one month following Dr.
11 Zodkevitch's report, indicate that Plaintiff had gone from 111 pounds
12 to 138 pounds. (AR 37-38, 397.)  Similarly, though Plaintiff had
13 initially reported side effects (AR 318, 320), subsequent entries
14 noted by the ALJ indicated no such complaints (AR 242, 246, 397).

15     The ALJ also cited the fact that Plaintiff's allegations were not
16 supported by and were, in fact, contradicted by, the evidence of
17 record.  The ALJ found:

18     Dr. Zodkevitch apparently based his finding solely upon the
19     claimant's self-serving and subjective complaints.  The
20     evidence shows that the claimant is able to remember and
21     concentrate sufficiently to work crossword puzzles, read for
22     30 minutes daily and watch television (Exhibit 4E/2).
23     Despite her allegations of agoraphobia, the claimant leads a
24     very active social life taking bus trips to casinos,
25     participating in church activities up to five times a week,
26     visiting other churches, visiting with family several times
27     a week and visiting friends monthly.
28 (AR 20-21.)

11

The ALJ's conclusion--that Dr. Zodkevitch's opinion was based on Plaintiff's exaggerated claims of incapacity--is supported by substantial evidence. *See e.g. Morgan*, 169 F.3d at 602 ("A physician's opinion of disability 'premised to a large extent upon the claimant's own accounts of his symptoms and limitations' may be disregarded where those complaints have been 'properly discounted.'"(quoting *Fair*, 885 F.2d at 605)).  For that reason, it will be affirmed.

Plaintiff, however, disputes that Dr. Zodkevitch's assessment was based solely on subjective complaints.  She argues that Dr. Zodkevitch also relied on clinical and objective evidence of depression, citing the Beck Depression Inventory.  (JS at 15-16.)  This test, however, is also subjective (AR 227), and while there is clinical evidence of depression, which the ALJ acknowledged, even Dr. Zodkevitch's clinical findings do not suggest the severe level of depression claimed by Plaintiff.  Grooming was normal, speech was normal, affect was full and appropriate, and there was no evidence of perceptual disturbances at the time of examination.  (AR 225-27.)  There was only slight impairment in memory, although Dr. Zodkevitch found decreased concentration.  (AR 229-30.)  Thus, this argument is without merit.

Plaintiff also claims that the ALJ erred in failing to cite specific medical evidence that undermined Dr. Zodkevitch's diagnosis of agoraphobia.  She claims that, in inferring that her activities were inconsistent with this diagnosis, the ALJ "substitute[d] his own medical judgment for that of a physician."  (JS at 16.)  The fact that no other physician, including Plaintiff's treating physicians, diagnosed agoraphobia or agoraphobic tendencies, however, amply supports the ALJ's decision to discount Dr. Zodkevitch's diagnosis of

1  agoraphobia.  For these reasons, Plaintiff's challenge to the ALJ's

2  findings regarding Dr. Zodkevitch is rejected.  (*Id.*)

3       3.  <u>Dr. Jobst Singer and Dr. Roger Izzi</u>

4       Plaintiff was examined by psychiatrist Jobst Singer on September

5  12, 2002.  (AR 189-93.)  She complained to Dr. Singer that she had

6  difficulty sleeping and that her mood was variable, although she had

7  "bad moods" every day.  (AR 189.)  She also claimed that sometimes

8  during the day she heard her name being called.  (AR 189.)  She

9  reported to Dr. Singer that she could not work because of anxiety and

10 stress problems, which prevented her from recalling her job tasks.

11 (AR 190.)  She further complained that she does not like to talk on

12 the telephone.  (AR 190.)

13      Dr. Singer diagnosed Plaintiff with mood disorder, not otherwise

14 specified, marijuana abuse, and alcohol dependence in early remission.

15 He assessed her GAF at 55.  (AR 192.)  He reported that "[t]he mental

16 status examination was done without significant problems."  (AR 192.)

17 Her ability to understand, remember, and perform instructions was

18 unimpaired both for simple and complex tasks.  (AR 192.)  He also

19 concluded that there were no identifiable psychiatric factors which

20 would interfere with her ability to complete a normal work day.  (AR

21 192.)  He found that judgement showed "no significant impairment that

22 would increase safety risks above normal."  (AR 192.)  Dr. Singer

23 concluded that Plaintiff's ability to relate and interact with

24 coworkers and the public was "perhaps somewhat impaired due to her

25 suspicious ideation about others."  (AR 192.)  He believed that this

26 could also interfere with her ability to be supervised.  (AR 192.)

27      Plaintiff underwent another consultative examination on March 3,

28 2004, with Roger Izzi, Ph.D.  She complained to Dr. Izzi that she

                                13

suffered from bipolar disorder, paranoia, poor memory, lack of speed, occasional problems with appetite, difficulty getting to sleep, unprovoked crying spells, and auditory hallucinations once or twice a week, with voices urging her to have one drink. (AR 370.) Plaintiff denied having hallucinations. (AR 369.) Her mood was dysphoric, i.e. she was depressed, but Dr. Izzi found no abnormalities in grooming, speech, orientation, or thought processes. (AR 370-71.)

Plaintiff was administered a number of psychological tests by Dr. Izzi. The Rey 15, a measure of intentional distortion, suggested that uintentional distortion of test results may be probable. (AR 371.) The results of the Wechsler Adult Intelligence Scale, the Wechsler Memory Scale, and the Trail-Making test all yielded lower than expected scores due to "emotional factors, or a poor effort." (AR 371-73.) The MMPI results showed a high F Scale, indicative of "a desire to appear worse off than she may actually be." (AR 374.) Dr. Izzi found that the combination of her scores was "another suggestion of exaggeration." (AR 374.)

Dr. Izzi diagnosed Plaintiff with mood disorder, not otherwise specified, alcohol related disorder, not otherwise specified, in complete remission by Plaintiff's report, and cannabis-related disorder, in complete remission by Plaintiff's report. (AR 374.) He concluded that Plaintiff's claimed hallucinatory experiences were not consistent with the medical records, which indicated that she told other doctors that she heard people calling her name. (AR 375.) Dr. Izzi felt that, given her treatment, it was reasonable to expect that the voices would be diminishing, not increasing, as she claimed. (AR 375.)

1    Dr. Izzi concluded:

2    It appears likely that there is some degree of exaggeration

3    present.  In the presence of exaggeration, the true nature

4    and extent of an individual's psychiatric problems become

5    somewhat obscured.

6    (AR 375.)

7    Dr. Izzi completed a medical source statement indicating, among

8    other things, that Plaintiff's ability to interact appropriately with

9    supervisors was moderately impaired.  (AR 379.)

10    Plaintiff contends that the ALJ erred in weighing Dr. Singer's

11    report because he "failed to mention [Dr. Singer's] finding that the

12    'suspicious ideation' stemming from her mood disorder *would* 'interfere

13    with her ability to be supervised.'" (JS at 15 (emphasis added).)

14    Plaintiff argues that this opinion "certainly bears upon [Plaintiff's]

15    ability to work and cannot simply be ignored."  (JS at 14-15.)

16    Plaintiff also contends that Dr. Izzi's assessment that she would have

17    moderate impairment in interacting with supervisors is consistent with

18    Dr. Singer's assessment and was likewise wrongfully ignored.  (JS at

19    15.)

20    Plaintiff's argument is not persuasive.  First, it is the ALJ's

21    responsibility to assess the medical evidence.  In so doing, he need

22    not accept the opinion of any expert.  *Sample*, 694 F.2d at 642.  In

23    this case, the ALJ did not adopt the opinion of any particular

24    physician but rather evaluated Plaintiff's complaints and the multiple

25    medical opinions, including the opinions of Dr. Singer and Dr. Izzi.

26    He was not required to accept everything either said, *see Russell v.*

27    *Bowen*, 856 F.2d 81, 83 (9th Cir. 1988), though he was under a duty to

28

15

1   explain his reasons for rejecting significant probative evidence.
2   *Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984).

3       Plaintiff argues that Dr. Singer's opinion that Plaintiff's "mood
4   disorder *would* 'interfere with her ability to be supervised'" is such
5   probative evidence which cannot be ignored.  (JS 14.)  She raises an
6   identical argument with respect to Dr. Izzi's finding of a moderate
7   impairment in relating to supervisors.

8       Dr. Singer did not say that Plaintiff's mood disorder "would"
9   interfere with her ability to be supervised, but, rather, that it
10  "could" interfere with that ability.  (AR 192.)  Thus, this argument
11  is rejected.

12      Dr. Izzi, on the other hand, indicated that the degree of
13  impairment in relating to supervisors would be "moderate."  (AR 379.)
14  The ALJ clearly considered Dr. Izzi's report and apparently believed
15  that there was nothing in his report to reject, inasmuch as a
16  "moderate" impairment means that the individual is "still able to
17  function satisfactorily."  (AR 378.)  Rather, the ALJ interpreted
18  Plaintiff's limitation with respect to interacting with co-workers,
19  the public, and supervisors in finding that Plaintiff was limited to
20  "task oriented [work that] does not involve group effort at problem
21  solving and would require no more than occasional contact with the
22  general public."[4]  (AR 24.)

23      For these reasons, the Court finds that the ALJ did not err in
24  evaluating the opinions of Dr. Singer or Dr. Izzi.

25

26      [4]  Plaintiff does not argue that Dr. Izzi's identical opinion of
27  moderate impairment in her ability to interact appropriately with co-
    workers was ignored by the ALJ in his residual functional capacity
28  assessment.

16

IV.

CONCLUSION

For the reasons set forth above, the Court finds that the Agency's findings are supported by substantial evidence and are free from material legal error.  The decision of the Agency, therefore, is affirmed.


IT IS SO ORDERED.


Dated:      September  __11___ , 2006.

                                              /s/

                                    _____
                                    PATRICK J. WALSH
                                    UNITED STATES MAGISTRATE JUDGE

S:\PJW\Cases-Soc Sec\JONES, B 2952\Memo Opinion_Ord.wpd

17